UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CHRISTOPHER STEFANONI,
      Plaintiff,

      v.                                  CASE NO. 3:13-cv-1234 (VAB)

DARIEN LITTLE LEAGUE, INC.,
LITTLE LEAGUE BASEBALL, INC.,
TONY FARREN, DAVID WILLIAMS,
RONALD DRAKE, and TODD BOE,
          Defendants.

**RULING ON DEFENDANTS' MOTION TO DISMISS**

## I.    INTRODUCTION

In his Second Amended Complaint, Plaintiff, Mr. Christopher Stefanoni, alleges that the Darien Little League, its national chartering organization Little League Baseball, Inc., and four individuals, Todd Boe, David Williams, Ronald Drake, and Tony Farren[1] violated Sections 1981, 1983 and 1985(3) by "banning" him as a coach from the Darien Little League and "demoting" his son to play on a lower level team in the League. Second Am. Compl., ECF No. 46; 42 U.S.C. §§ 1981, 1983, 1985(3). He alleges that Defendants sought to deter him from building affordable housing in Darien, Connecticut and prevent him from increasing the African-American population of Darien.

Before the Court is Defendants' Second Motion To Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief can be granted. Defs.' Second Mot. To Dismiss, ECF No. 50. For the reasons that follow, the Court

---

[1] All of these individuals are Darien residents and "recent" members of the Board of Directors of the Darien Little League. Second Am. Compl. ¶¶ 6-11, ECF No. 46. Messrs. Williams, Drake and Farren were Darien Little League Board members from 2009 to 2011, when the acts that Mr. Stefanoni complains about occurred. *Id.* Mr. Farren was a member of the Board from 2005 to 2011; Mr. Williams from 2007 to the date the Complaint was filed; and Mr. Drake from 2009 to 2013. *Id.* However, Mr. Boe was only a Darien Little League Board member from 2007 to 2009. *Id.* ¶ 11.

finds that Plaintiff has failed to state plausible Section 1981, 1983 or 1985(3) claims and **GRANTS** Defendants' Motion to Dismiss on all counts.

In sum, Mr. Stefanoni's lawsuit must be dismissed for two reasons.  First, none of the Defendants in this case are state actors within the meaning of Section 1983 and 1985(3) and therefore, they cannot be sued under these statutes.  Second, a Section 1981 claim cannot be sustained here by only alleging that the Defendants opposed affordable housing in Darien.  Mr. Stefanoni also had to allege that they opposed affordable housing in Darien because it would result in more African-American residents in the Town and support this allegation with specific facts and not just conclusory statements.  Significantly, for many of the Defendants, he failed to allege that they even opposed affordable housing in Darien, much less that they did so for racially based reasons.

## II.    FACTUAL ALLEGATIONS

The Darien Little League is a Connecticut corporation that runs a youth baseball league in Darien, Connecticut.  Second Am. Compl. ¶ 4, ECF No. 46.  The Darien Little League is chartered by Little League Baseball, Inc., a national organization based in South Williamsport, Pennsylvania that charters Little League baseball organizations "throughout the world."  *Id.* ¶¶ 4-5.  Plaintiff, Mr. Christopher Stefanoni, and his wife and proposed intervenor in this action, Mrs. Margaret Stefanoni, have three sons who have played baseball in the Darien Little League since 2004.  *Id.* ¶¶ 32, 35.

Mr. Stefanoni has coached "more than 35 Little League games" and alleges that he had been selected to coach Darien Little League games during the Fall 2010 season.  *Id.* ¶¶ 32, 51.  He claims that Darien Little League structures its teams

"according to age and ability," with the "AA" level for children in second grade, "AAA" for children ages 8 and older, "Minors" for children ages 9 to 11, and "Majors" for children ages 10 to 12.  *Id.* ¶ 36.  Tryouts for AAA, Minors, and Majors are held in the Spring of each year.  *Id.* ¶ 37.

Mr. Stefanoni also alleges that his son was selected to play at the Minors level of the Darien Little League during the Spring of 2010 and played 44 games at that level during the Spring and Summer of 2010.  *Id.* ¶ 38.  He claims that his son was appropriately placed at the Minor level on the first day of the Fall 2010 season, August 26, 2010, but was inappropriately "demoted" one day later to play with AA and AAA level players for the duration of the Fall season.  *Id.* ¶¶ 9, 41-42. Defendant David Williams, a member of the Darien Little League Board of Directors and the Commissioner of Fall Baseball at the time, informed him of this decision.  *Id.* ¶¶ 42.  Mr. Stefanoni alleges that this decision was a "completely unprecedented and unwarranted retaliatory action" against him.  *Id.* ¶¶ 43-45.

Mr. Stefanoni and his wife appealed the decision to "demote" their son to various individuals affiliated with the Darien Little League and Little League Baseball, Inc., including Defendant Tony Farren as well as Scott Miller, who at the time was the head of Connecticut's Little League District 1, which oversees the various Little League organizations of certain Connecticut towns including Darien.  *Id.* ¶¶ 46-47.   Mr. Stefanoni alleges that they refused to reverse the decision and insisted that the roster in the Minors was too large to accommodate his son.  *Id.* ¶¶ 46-50.  Mr. Stefanoni believes this reason to be pretextual because his son was "demoted" to a team with 15 players, and many other Darien Little League teams had roster sizes of 14 or 15.  *Id.* ¶¶ 49-50.

"To prevent further humiliation of being singled out, demoted and excluded," Mr. Stefanoni alleges that he withdrew his son from Darien Little League's Fall Program. *Id.* ¶ 51.  He also did not coach during Fall 2010 "even though he had been deemed in good standing to coach and selected as a coach for that season." *Id.*  He was subsequently "banned" from coaching Darien Little League on March 4, 2011 because, he was told by Defendant Drake, he was considered a "'lightning rod' in the community." *Id.* ¶¶ 51, 57-58.[2]  After he was "banned," Mr. Stefanoni alleges that his wife forwarded a package of documents to Little League Baseball, Inc. explaining what had happened to him and their son, and that the national organization did nothing to correct these so-called misdeeds.  *Id.* ¶¶ 60-61.

Mr. Stefanoni alleges that the Darien Little League took these actions against him and his son "for the purpose of threatening, intimidating, and retaliating" against him and his family for efforts to develop a particular plot of land on Hoyt Street into affordable housing.  *Id.* ¶ 67.  He seeks damages for the "economic losses and emotional distress" he claims to have suffered as a result.  *Id.* ¶ 68.

Mr. and Mrs. Stefanoni are real estate developers who have sought permits since 2005 to build affordable housing in Darien.  *Id.* ¶ 14.[3]  Mr. Stefanoni alleges that the construction of such affordable housing "will lead directly to an increase" in the town's population of African Americans and that Darien is "a white enclave" with "a long history of exclusionary housing practices that discourage African Americans from residing in

---

[2] At the March 27, 2015 oral argument on the Defendants' Second Motion to Dismiss, ECF No. 50, Mr. Stefanoni informed the Court that he has since been reinstated as a coach in the Darien Little League. He said that he began coaching again in 2013 and currently coaches Darien Little League games.  He also noted that his son who he alleges was "demoted" in his Second Amended Complaint currently plays baseball with the Darien Little League.
[3] Mr. Stefanoni also alleges that the couple publicly writes about racial integration in Darien.  *See e.g.,* Second Am. Compl. ¶ 56; ECF No. 46.

the town." *Id.* ¶¶ 12-13, 15-16, 21 (citing statistics showing that Darien has a significantly smaller population of African Americans than neighboring Connecticut towns).[4]  These exclusionary "practices," as alleged in the Complaint, include keeping costs of housing "prohibitively high" and "preventing the construction of affordable housing units." *Id.* ¶ 16.  Mr. Stefanoni further alleges that members of the Darien community "widely perceive[ ]" his family's efforts to develop affordable housing "as an attempt to open up housing opportunities in Darien to African Americans." *Id.* ¶ 21.  He adds that the statute under which he seeks to develop affordable housing requires that such housing be "affirmatively marketed to minorities."  *Id.* ¶ 16 (citing Conn. Gen. Stat. §8-30g).

Mr. Stefanoni alleges that, in late December 2009, he purchased two pieces of property in Darien that he intended to develop into affordable housing, and that the Darien community knew that was his intention.  *Id.* ¶¶ 22-23.  In particular, the property purchased at Hoyt Street abutted the property of Mark Gregory, whose son had played in the Darien Little League and who was a member of its Board of Directors from 2004 to 2009.  *Id.* ¶¶ 24-26.  Mr. Gregory was originally a named Defendant in this case but was removed from the Second Amended Complaint.  *Compare* Second Am. Compl.*,* ECF No. 46, *with* Compl., ECF No. 1.[5]  Mr. Stefanoni alleges that "soon after" he purchased these two properties and, by late February 2010, then First Selectman David Campbell "desperately," "secretly," and ultimately unsuccessfully sought a moratorium on the granting of permits to build affordable housing.  Second Am. Compl. ¶¶ 20, 29-

---

[4] Mr. Stefanoni alleges that Darien's "recent zoning practices" were the subject of a U.S. Department of Justice investigation in May 2010.  Second Am. Compl. ¶ 15; ECF No. 46.

[5] Tom Luz and James Batson, who served as Darien Little League's legal counsel, were also originally named in the Complaint but have since been removed from the lawsuit by Mr. Stefanoni.  *Id.*

31, ECF No. 46.  Mr. Stefanoni also alleges that Mr. Gregory was actively and "adamantly opposed" to his family's efforts to "develop housing next door to his residence."  *Id.* ¶ 28.

Mr. Stefanoni claims that the Darien Little League's "demotion" of his son and "ban" of him as a coach occurred at the same time as certain developments in his application for a permit to build affordable housing at the Hoyt Street property.  Mr. Stefanoni submitted an affordable housing application for Hoyt Street on August 20, 2010.  *Id.* ¶ 40.  He alleges that his son was placed on the Minors team initially for the Fall season on August 26, 2010, but was taken off the team one day later, on August 27.  *Id.* ¶¶ 41-42.  Mr. Stefanoni also indicates that Darien Little League's "ban" of him as a coach occurred "a few days prior to the official release of the already public decision" to approve his application to develop affordable housing at Hoyt Street.  *Id.* ¶ 57.  He alleges that Tom Luz, then counsel to Darien Little League, "falsely and maliciously" made a public comment that the coaching "ban" was the organization's reaction to some "incidents on the field" and not to the issuance of a permit to build affordable housing.  *Id.*  ¶¶ 58-59.

After his son's "demotion," Mr. Stefanoni also alleges that he received e-mails from Defendant Todd Boe, a former Board member of the Darien Little League, on September 15 and 16, 2010, expressing anger about the possibility of developing the Hoyt Street property into affordable housing.  *Id.* ¶ 52.  As characterized by the Complaint, the e-mails note "I GAVE YOU THE BENEFIT OF THE DOUBT, BUT YOU ARE TRULY EXTORTIONISTS. THINK ABOUT WHAT YOUR KIDS ARE ABOUT TO GO THROUGH… [Y]ou guys have gone too far.  What about the people on Georgian

Lane [the address of the residence of Mark Gregory, good friend of Todd Boe and recent Board member and Legal Counsel for the Darien Little League] or Pheasant Street that thought they would have a nice nest egg of home equity?... The gloves are off." *Id.*

Mr. Stefanoni claims that Darien Little League "has a close and intertwined relationship" with the Town of Darien. *Id.* ¶ 17. He explains that the Darien Little League has "exclusive use" of the town-owned McGuane Park. *Id.* He also notes that the Darien Little League was permitted to construct buildings in McGuane Park, which they own and are not open to the general public, and that a sign at the park's entrance reads "Home of Darien Little League." *Id.* Mr. Stefanoni adds that the Darien Little League "applied jointly" with the Town of Darien Parks and Recreation Commission to the Darien Planning and Zoning Commission to "re-design and re-build" a baseball field exclusively for use by children in another town-owned park, Cherry Lawn Park, and that the Darien Little League raised funds for the project. *Id.* ¶ 18. He also alleges that a company owned by First Selectman Campbell was a "major donor" to the construction of facilities for the Darien Little League at McGuane Park and the organization's "long-time sponsor." *Id.* ¶ 19.

Mr. Stefanoni alleges that that the Darien Little League "has a history of turning a blind eye to racist comments made by its young constituents" and that the "racist and bigoted social media postings" made by the children of Board members "demonstrate a prevailing close-minded attitude and a learned behavior from their 'role models.'" *Id.* ¶ 66. Mr. Stefanoni also notes that the Darien Little League Board refused to honor an

agreement between himself and Steve Messina, then President of the Darien Little

League, to erect a statue of Jackie Robinson in McGuane Park.  *Id.* ¶¶ 64-65.

### III.   PROCEDURAL HISTORY

Mr. Stefanoni first filed this lawsuit on August 26, 2013 and then filed an

amended complaint on October 6, 2013.  Compl., ECF No. 1; First Am. Compl., ECF

No. 16.  In his First Amended Complaint, he alleged that Defendants violated Sections

1981, 1985(3) and 1988 of Title 42 of the United States Code by acting to deter him

from building affordable housing and, thereby, conspiring to deprive people of color of

their right to equal housing opportunities in Darien, Connecticut.  First Am. Compl. ¶¶ 2,

33, ECF No. 16.[6]  Mr. Stefanoni and his son, as the named Plaintiffs,[7] claimed damages

for economic loss and emotional distress as a result of Defendants' actions.  *Id.* ¶ 35.

At these initial stages, Plaintiffs were represented by counsel.  Notice of Appearance by

John R. Williams, ECF No. 2.

In response to the First Amended Complaint, on November 7, 2013, Defendants

filed a motion to dismiss and a motion for sanctions for filing a frivolous lawsuit.  Defs.'

First Mot. To Dismiss and for Sanctions, ECF No. 23.  Defendants argued that Plaintiffs

failed to state a claim upon which relief could be granted because, among other

reasons, they had failed to plead facts in support of state action, intentional racial

discrimination, or a link between the Defendants and the supposed conspiracy that

operated to violate Sections 1981 or 1985.  Memo. in Supp. of Defs.' First Mot. To

---

[6] Plaintiff made reference to a Section 1983 claim in his initial complaint, but not in the First Amended Complaint.  Compl. ¶35, ECF No. 1. At oral argument for the First Motion to Dismiss, however, Mr. Stefanoni's counsel indicated that he did not intend to make the Section 1983 claim.  Tr. of Mot. H'g 3:14-17, ECF No. 49.
[7] Mr. Stefanoni's son, A. Stefanoni, was named as a second plaintiff in the case initially.  *See* Compl. ECF No. 1; First Am. Compl., ECF No. 16.  His name was removed from the Complaint, however, when Mr. Stefanoni filed his Second Amended Complaint on July 8, 2014.  *See* Second Am. Compl., ECF No. 46.

Dismiss 11, 15, ECF No. 25; Defs.' Rep. 5-6, ECF No. 34.  In support of their motion for sanctions, Defendants argued that the lawsuit was frivolous and filed as a "vindictive act" to harass the Defendants and "perhaps to chill others from speaking up against future development plans."  Memo. in Supp. of Defs.' First Mot. To Dismiss 20-25, ECF No. 25.  20-25.

On May 8, 2014, Judge Underhill granted the Defendants' First Motion to Dismiss, without prejudice to the Plaintiff amending his complaint, and denied the request for sanctions.  Minute Entry, ECF No. 41.  In granting the Motion to Dismiss, the Court stated that the connection pled by Plaintiffs between the actions of the Defendants and the ability of "absent" people of color to find affordable housing in Darien was "entirely implausible."  Tr. of Mot. Hr'g 23-24, ECF No. 49.

After the Motion to Dismiss was granted, Mr. Stefanoni appeared on a *pro se* basis.  ECF Nos. 43, 44.  Mr. Stefanoni then filed a Second Amended Complaint on July 8, 2014 and, in doing so, removed his son as a named plaintiff from the lawsuit. Second Am. Compl., ECF No. 46.  Defendants filed the Second Motion to Dismiss that is currently before the Court on September 5, 2014.  Defs.' Second Mot. To Dismiss, ECF No. 50.

On November 13, 2014, three days after the Defendants filed their reply brief in support of their Motion to Dismiss, Plaintiff's wife, Mrs. Margaret Stefanoni, filed a Motion to Intervene, which Defendants opposed.  Mot. to Intervene, ECF Nos. 58, 62, 65.  In a telephonic status conference held on February 27, 2015, the Court permitted Mrs. Stefanoni to make a written submission regarding the Motion to Dismiss but reserved judgment on the Motion to Intervene until after the Motion to Dismiss was

decided.  Scheduling Order, ECF No. 72.  Consistent with this Order, Mrs. Stefanoni

and Defendants made additional filings, ECF Nos. 74, 75, before this Court held oral

argument on the Motion to Dismiss on March 27, 2015.  Minute Entry, ECF No. 76.  At

oral argument, the Court permitted Mrs. Stefanoni to present oral arguments on her

husband's behalf, provided they were not duplicative of any made by Mr. Stefanoni.

## IV.   STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim

for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A

claim is facially plausible if "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*  Although "detailed factual allegations" are not required, a complaint must offer more

than "labels and conclusion," or "a formulaic recitation of the elements of a cause of

action" or "naked assertion[s]" devoid of "further factual enhancement.  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555, 557 (2007).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

In determining whether the plaintiff has met this standard, the Court must accept

the allegations in the complaint as true and draw all reasonable inferences in favor of

the non-moving party.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir.

2007).  Moreover, the Court must construe *pro se* pleadings liberally to "raise the

strongest arguments [they] suggest [ ]."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.

2007) (citation omitted).  In considering a motion to dismiss, the Court may consider

only "facts as asserted within the four corners of the complaint, the documents attached

to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## V.    DISCUSSION

As a preliminary matter, because Mr. Stefanoni's son is no longer named as a plaintiff in the Second Amended Complaint, he is not currently a party to this lawsuit. Second Am. Compl., ECF No. 46.  In addition, Mr. Stefanoni is *pro se* and cannot pursue any claims on his son's behalf.  *Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir. 1990) (holding that a *pro se* individual may not appear and/or pursue claims on another person's behalf, including his or her own minor child). Thus, the Court cannot consider Mr. Stefanoni's son's placement on a lower level team in the Darien Little League as a separate claim but only as a fact pled in support of Mr. Stefanoni's claims.

### A.  Section 1983 Claim

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory… subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law."  42 U.S.C. § 1983.  Section 1983 does not provide a remedy with respect to "merely private conduct, no matter how discriminatory or wrongful."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999) (internal quotation marks omitted) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).  To state a Section 1983 claim, the Complaint must indicate that the relevant action causing the constitutional deprivation was "fairly attributable to the State."  *Lugar v. Edmondson Oil*

*Co.*, 457 U.S. 922, 936-37 (1982).  Mr. Stefanoni's Section 1983 claim must be dismissed because he has not plausibly alleged that the Defendants acted under color of state law.  *See* Fed. R. Civ. P. 12(b)(6).

To prove an action is attributable to the State "a plaintiff must establish both that [the] alleged constitutional deprivation [was] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation [is] a person who may fairly be said to be a state actor."  *Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d 259, 263-64 (2d Cir. 2014) (citations and internal quotation marks omitted) (emphasis in original).  The latter inquiry requires proof that "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* at 264 (internal quotation marks and citations omitted).

At the pleading stage, a plaintiff need not conclusively prove state action but must plausibly allege that it occurred by relying on more than "vague and conclusory" statements.  *White v. Monarch Pharm., Inc.*, 346 F. App'x 739, 741 (2d Cir. 2009) (citation omitted) (dismissing a Section 1983 complaint for failing to plausibly allege state action); *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (citation omitted) (same); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.") (citation omitted).

The Second Circuit has instructed that the fair attribution analysis must begin by identifying the "specific conduct of which the plaintiff complains, rather than the general

12

characteristics of the entity." *Grogan,* 768 F.3d at 264 (internal quotation marks and citations omitted).  From there, the determination of whether there is state action is a "matter of normative judgment" that requires the Court to examine the totality of the circumstances.  *Id.*  Mr. Stefanoni alleges that the Defendants "banned" him from coaching in the Darien Little League.[8]  Thus, the question before the Court is whether this internal personnel or management decision of the Darien Little League, an otherwise private entity, may be fairly attributable to the State.

"Several tests have been devised by the Supreme Court" to determine whether a private party's actions constitute state action under the Fourteenth Amendment. *Giannattasio v. Stamford Youth Hockey Ass'n, Inc.*, 621 F.Supp. 825, 826 (D. Conn. 1985).  A court may find that state action occurred if "the State creates the legal framework governing the conduct; if it delegates its authority to the private actor; or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior." *Nat'l Coll. Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192 (1988); *see also* Martin A. Schwartz, *Section 1983 Litigation: Claims & Defenses* § 5.12 (4th ed. 2015) (noting five tests have been used to determine whether state action exists: the symbiotic relationship test, the pervasive entwinement test, the public function test, the close nexus test, and the joint action test).  Mr. Stefanoni's claim fails under all applicable tests.

### 1.  Symbiotic Relationship and Pervasive Entwinement Tests

Plaintiff's theory most directly implicates the "symbiotic relationship" or "entwinement" tests, in which a private entity qualifies as a state actor if it "is entwined

---

[8] Because Mr. Stefanoni cannot assert claims on his son's behalf, as noted above, the issue of whether Darien Little League's placement of his son on a lower level team was state action is irrelevant to determining whether Defendants are liable under Section 1983.

with governmental policies, or when government is entwined in its management or control." *Grogan*, 768 F.3d at 268 (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001).  Under these tests, private conduct qualifies as state action when "[t]he State has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity."  *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1081 (2d Cir. 1990) (citation omitted); *see also Bretwood Acad.*, 531 U.S. at 296.  Mr. Stefanoni's Section 1983 claim cannot meet this test. The alleged relationship between and among the various Defendants with governmental policies or actors is too minimal.

The Second Circuit specifically noted that to show state action in the context of an organization's employment decisions, a plaintiff is "required to show that the State is so entwined with [the defendant's] management that its personnel decisions are fairly attributable to the State."  *Grogan,* 768 F.3d at 268 (citation omitted).  The Town of Darien does not participate in the day-to-day decisions made by the Darien Little League regarding its staff of coaches.  At oral argument, it was conceded that no Town official directed the Darien Little League to take the actions it did against Mr. Stefanoni. Mr. Stefanoni also does not allege that the Town funds the Darien Little League directly, but rather that a Town official's company donates to the organization.  Second Am. Compl. ¶ 19, ECF No. 46.  In the absence of factual allegations indicating a closer relationship with the Town, purely internal management decisions made by the Darien Little League cannot constitute state action.  *Giannattasio*, 621 F.Supp. at 827-28 (finding that a complaint making Section 1983 claims regarding the suspension of players from the Stamford Youth Hockey Association did not involve state action for the

14

purposes of a Section 1983 claim because there was no indication that the City played any role in the decision to suspend).

The Town of Darien does provide the Darien Little League with preferential access to public parks, but this access merely indicates that it supports the playing of Little League baseball in Darien, Connecticut.  Such support cannot convert purely internal management decisions made by the Darien Little League, in which the Town took no role, into state action.  *See Grogan*, 768 F.3d at 268-69 (finding that because the town did not have "any say" in management or personnel decisions, there was no state action when an entity that had contracted with the town to provide ambulance services suspended its employee from work); *cf. Horvath v. Westport Library Ass'n*, 362 F.3d 147, 154 (2d Cir. 2004) (finding that a library association's termination of an employee constituted state action because the Town of Westport had authority to appoint one-half of the association's Board and the association was "almost exclusively" funded by the Town).

Mr. Stefanoni also alleges that the Darien Little League applied "jointly" with the Darien Parks and Recreation Commission to design and re-build a baseball field in a Darien public park, but again, this merely indicates that the Town supports Little League baseball.  Moreover, the Darien Little League allegedly "raised the funds for the project," belying the existence of the closely "intertwined" financial relationship that Plaintiff conclusorily describes.  Second Am. Compl. ¶ 18, ECF No. 46.

### 2.  Public Function Test

The "public function" test finds state action if a private entity is performing an activity delegated by the State that has traditionally been "an exclusive prerogative of

the sovereign." *Grogan,* 768 F.3d at 265 (citation and internal quotation marks omitted). Here too, Mr. Stefanoni has failed to allege plausibly that the Darien Little League is exercising this type of traditionally sovereign function.  Administering a youth baseball league is not a traditional sovereign function.  *See Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 19 (1st Cir. 1999) (citing *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 197 n.18 (1988) (finding that the function of fostering amateur athletics was certainly important but was not a "traditional public function" and therefore not state action)).

### 3.  Close Nexus Test

The "close nexus" test provides that state action is present when the State has "exercised coercive power or has provided such significant encouragement [to a private entity] that the choice must in law be deemed to be that of the State." *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52 (citations and internal quotation marks omitted); *Hadges,* 918 F.2d at 1082 (noting that the "close nexus" test is "the standard for determining whether state regulatory control qualifies as state action").  "While the symbiotic relationship test focuses on the state's overall relationship with the private actor, the close nexus test specifically examines the state's link to the challenged action." *Hadges*, 918 F.2d at 1082 (citation omitted).  Here, there is no allegation that the Town of Darien was involved at all in or even aware of the decisions made regarding Mr. Stefanoni.  Thus, there can be no state action under the "close nexus" test.  *See id.* at 1083-84.

### 4.  Joint Action Test

Finally, in arguing that the Town of Darien and Darien Little League shared the "same goals," Stefanoni appears to suggest that there is state action under the joint

16

participation doctrine.  Under this test, for state action to exist, the private actor must be a "willful participant" in a joint activity with the State, thereby sharing a "common goal to violate the plaintiff's rights."  *Betts v. Shearman*, 751 F.3d 78, 84-85 (2d Cir. 2014) (citations omitted).  Here, it is argued that Darien shared the same goal as the Defendants, to stop affordable housing developments, because the ban of Mr. Stefanoni from coaching would prevent him from building affordable housing.  Intervenor's Memo. In Opp. To Mot. to Dismiss 6-7, ECF No. 74.  This reasoning, however, is circular because Mr. Stefanoni has failed to claim plausibly that the Town and the Darien Little League share this common goal.

Mr. Stefanoni makes fact-specific allegations that two former Darien Little League Board members, Mark Gregory and Todd Boe, opposed the development of affordable housing in Darien, but there is nothing in the Second Amended Complaint to suggest that they were doing so on behalf of the Town of Darien.  With respect to the other Defendants, he does not allege that any of them, including the Darien Little League and its Board members at the time he was banned from coaching, took any view on affordable housing in Darien, much less Mr. Stefanoni's role in developing it.  He also does not connect sufficiently the opinions of Mark Gregory and Todd Boe to either the Darien Little League as an organization or the actions taken against him.  In any event, conclusorily arguing that the two entities shared a common goal is not sufficient to state a claim involving state action.  *See Betts*, 751 F.3d at 86 (dismissing a Section 1983 claim for failing to allege plausibly a private individual and the State shared a common goal of violating the plaintiff's constitutional rights).

For all of these reasons, Mr. Stefanoni has failed to allege plausibly that the Defendants' actions can be fairly attributed to the State.  As a result, his Section 1983 claim must be dismissed.

### B.  Section 1985(3) Claim

Section 1985(3) provides an action for damages caused by "two or more persons" who conspire to deprive someone of equal protection of the laws, so long as one person takes an act in furtherance of the object of the conspiracy.  42 U.S.C. § 1985(3).  To allege a Section 1985(3) claim,  Mr. Stefanoni must plead "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the law, or of equal privileges and immunities under the law; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right of privilege of a citizen of the United States."  *Rini v. Zwirn*, 886 F.Supp. 270, 290 (E.D.N.Y. 2001) (citing *United Bhd. Of Carpenters & Joinders, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)).  Mr. Stefanoni has failed to state a plausible Section 1985(3) claim.

Despite the "two or more persons" language in the statute, which indicates that the statute may reach purely private conduct, the Second Circuit has held "a conspiracy to deny equal protection in violation of the Fourteenth Amendment [under Section 1985(3)] is not actionable in the absence of state action."  *Edmond v. Hartford Ins. Co.*, 27 F. App'x 51, 53 (2d Cir. 2011) (citing *United Bhd. Of Carpenters & Joinders, Local 610*, 463 U.S. at 831-32).  Since the Fourteenth Amendment itself requires state action, a Section 1985(3) action claiming a conspiracy to violate the Equal Protection Clause of

the Fourteenth Amendment also requires state action.  *United Bhd. Of Carpenters & Joinders, Local 610*, 463 U.S. at 832-33.

Because the Court finds that state action is required to state a claim under Section 1985(3), for the reasons set forth above, with respect to his Section 1983 claim, Mr. Stefanoni has failed to allege state action plausibly.  *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 929 (1982) (holding that Section 1983's "under color of state law" requirement and the "state action" required under the Fourteenth Amendment are "identical").  His Section 1985(3) claim therefore must be dismissed.

### C.  Section 1981 Claim

Section 1981 requires that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts… as is enjoyed by white citizens."  42 U.S.C. § 1981.  To state a claim under section 1981, "a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts…)."  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (citation omitted).[9]  With respect to the first element, a white person also has standing to sue under Section 1981 if he or she has suffered injury to some cognizable interest as a result of "'trying to vindicate the rights of (non-white) minorities.'"  *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 312 & n.9 (2d Cir. 1975) (citing *Sullivan v. Little Hunting Park*, 396 U.S. 229,

---

[9] Section 1981 applies to private and state actions.  *Yusuf v. Vassar College*, 35 F.3d 709, 714 (2d Cir. 1994) (citing *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1976)).  Thus, the question of state action is not at issue under Section 1981, as it is under Sections 1983 and 1985(3).

237 (1969)) (finding that a white plaintiff had standing under Section 1981 based on claims that he had been expelled from a corporation which operated community recreational facilities solely because he had leased his house and assigned his membership share in the corporation to an African American), *modified on other grounds*, 520 F.2d 409 (2d Cir. 1975).  Mr. Stefanoni has failed to allege a plausible Section 1981 claim.

Section 1981 only prohibits "intentional racial discrimination"; disparate impact claims cannot support a Section 1981 violation unless accompanied by a plausible allegation of discriminatory intent.  *Brown v. City of Oneonta, New York*, 221 F.3d 329, 338-339 (2d Cir. 1999) (citing *Gen.  Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391 (1982)) (dismissing Section 1981 claims for failure to adequately allege discriminatory intent).  Moreover, merely conclusory allegations of racial discrimination do not suffice to state a claim under Section 1981, instead, "the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994); *see also Carson v. Lewis*, 35 F.Supp.2d 250, 269 (E.D.N.Y. 1999) (internal quotation marks and citation omitted) ("[N]aked assertion[s] by plaintiff[s] that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race [are] too conclusory…").

Any Section 1981 claim also must "initially identify an impaired 'contractual relationship' under which the plaintiff has" or would have rights, had it been formed. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).  While Section 1981 does

apply when the actions of third parties impede contract formation or preclude offers to contract, as is the case here under Plaintiff's theory, "liability only attaches to persons who actually had the power or authority to prevent the plaintiff from entering into a contract with the third party." *Robledo v. Bond No.* 9, 965 F.Supp.2d 470, 477 (S.D.N.Y. 2013); *see also Ginx, Inc. v. Soho Alliance,* 720 F.Supp.2d 342, 347, 357-58 (S.D.N.Y. 2010) (holding that a group of community leaders who filed a lawsuit to prevent plaintiffs from obtaining a permit to operate a restaurant did not have the power to impact the award of the permit for the purposes of a Section 1981 claim).

In addition, Mr. Stefanoni must allege some causal nexus between the described conduct at issue in the case, discriminatory animus, and one of the enumerated Section 1981 categories. *See Albert v. Carovano*, 851 F.2d 561, 572-73 (2d Cir. 1988) (requiring fact-specific, particular allegations of a causal link between the defendant's actions and the rights of the non-white minorities the plaintiff seeks to vindicate to support a Section 1981 claim), *distinguished on other grounds by United States v. Stein*, 541 F.3d 130 (2d Cir. 2008); *Whidbee v. Garzarelli Food Specialities, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (citation omitted) ("[I]n order to make out a claim for individual liability under Section 1981, a plaintiff must demonstrate 'some affirmative link to causally connect the actor with the discriminatory action.'").

Relatedly, he also must plead the personal involvement of all defendants in the actions that he alleges violate Section 1981. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004); *see also Cirino-Rodriguez v. William George Agcy. For Children Servs., Inc.,* No. 5:11-CV-1219 (LEK/ATB), 2012 WL 3704960, at *6 (N.D.N.Y. Aug. 27, 2012) (dismissing a complaint for failing to allege personal involvement of a

defendant).  Personal involvement includes both "direct participation" but also "gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations were occurring." *Patterson*, 375 F.3d at 229 (citation and internal quotation marks omitted)**.**

The cumulative effect of the prevailing Section 1981 case law is that, in order to have a viable claim, Mr. Stefanoni must have had his right to contract impaired in furtherance of a discriminatory purpose by a specific actor or group of actors.  Here, he claims that his Section 1981 rights have been violated in two ways.  First, he claims that the Defendants interfered or tried to interfere with his efforts to bring affordable housing to Darien, which would have resulted in the Town of Darien having more African-American residents.  Pl.'s Opp. 7, ECF No. 56.  Second, he claims that the Defendants sought to deny him and his family the opportunity to participate in the Darien Little League because of his efforts to increase the number of African-American residents in the Town of Darien.  Intervenor's Memo. In Opp. To Mot. to Dismiss 2-3, ECF No. 74. Both legal theories fail as a matter of law, given the facts alleged—or really, the facts not alleged—in Mr. Stefanoni's Second Amended Complaint.

The Court will address each of these legal theories in turn, but first will clarify the threshold burden either theory must meet in order to survive a motion to dismiss.  As the Second Circuit has made clear, Mr. Stefanoni "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf*, 35 F.3d at 713.  In other words, it is not enough for Mr. Stefanoni to allege that any of the Defendants opposed affordable housing in Darien.  At a minimum, he also must allege that each of the

22

Defendants sought to oppose affordable housing in Darien because it would result in more African-American residents in Darien.  Likewise, to make out a viable Section 1981 claim based on his family's exclusion from the Darien Little League, Mr. Stefanoni must allege that each of the Defendants sought to retaliate against him because he wanted the Town of Darien to have more African-American residents.   After three tries, however, Mr. Stefanoni's Second Amended Complaint fails to make the threshold factual allegations necessary to sustain a viable Section 1981 claim. [10]

### 1.  The Alleged Impairment of a Contract for Affordable Housing

Mr. Stefanoni alleges that his role as an affordable housing developer is viewed by the community as encouraging African Americans to move to Darien.  *See DeMatteis*, 511 F.2d at 312 & n.9.  He has failed, however, to plead sufficient facts to show a relationship between affordable housing construction, race, and the specific Defendants he has sued in this case.  Instead he has pled "conclusions" devoid of "further factual enhancement" that fail to meet the *Twombly* and *Iqbal* standard. *Twombly,* 550 U.S. at 557.  Thus, his legal claim has no plausible relationship to intentional racial discrimination and should be dismissed.  *Brown*, 221 F.3d at 338-39.

There are no plausible factual allegations, as required for a Section 1981 claim, that any of the Defendants prevented Mr. Stefanoni from building affordable housing in Darien because they did not want more African-American residents in Darien.   Mr. Stefanoni does not allege any facts indicating that Little League Baseball, Inc., a non-profit corporation based in Williamsport, Pennsylvania, had any contact with or

---

[10] Mr. Stefanoni also notes under the Section 1981 section in his opposition brief that the he was "publicly slandered" and that he had "meritless criminal charges pressed against him" due to his efforts to develop affordable housing.  Pl.'s Opp. 6, ECF No. 56.  As he neither pled nor argued that these events implicated any of the named Defendants, the Court will disregard them in analyzing his Second Amended Complaint.

relationship to the Darien Planning and Zoning Commission or authority with respect to the approval of affordable housing permit applications in Darien.  Indeed, it is not clear why a national organization dedicated to Little League Baseball around the world would have any interest in the racial population of any town in the United States, much less the Town of Darien.  This is not to say that a national organization could not have a parochial interest in the racial population of a given town.  It is to say that such an interest and specific activities in furtherance of that interest in any particular case must be pled to survive a motion to dismiss.  Mr. Stefanoni has not met this pleading burden with respect to Little League Baseball, Inc.

Now, all of the other defendants have unmistakable geographic ties to the Town of Darien.  It therefore is conceivable that these Defendants, both the local organization and the specifically named individuals, might have an interest in impairing contracts related to affordable housing in Darien generally and limiting the Town's African-American population specifically.  The factual allegations asserted here, however, do not even remotely suggest that they did so.

While Mr. Stefanoni alleges that the Darien Little League took actions "for the purpose of threatening, intimidating, and retaliating against him and his family for efforts to develop a particular plot of land on Hoyt Street into affordable housing," Second Am. Compl. ¶ 67, this conclusory statement is not supported by any specific factual allegations.  There is not a single allegation that Darien Little League, as an organization, took any position on affordable housing in Darien.  *Yusuf*, 35 F.3d at 713. Mr. Stefanoni also does not allege that the Darien Little League had any power to affect the impact of his affordable housing permit application.  *Ginx*, 720 F.Supp.2d at 347,

357-58; *see also Albert*, 851 F.2d at 572-73.  His complaint instead focuses on the actions of First Selectman Campbell and Mark Gregory, who did take affirmative steps to block the building of affordable housing, but neither of these individuals are Defendants in this action.  *See* Second Am. Compl. ¶¶ 28-31, ECF No. 46.  There can be no viable Section 1981 claim against the Darien Little League, given these sparse factual allegations.

With respect to Defendants David Williams, Tony Farren and Ronald Drake, there are no allegations whatsoever in the Complaint suggesting that they had a position on affordable housing, much less took any action to oppose affordable housing in Darien because it might lead to more African-American residents in Darien.  The Second Amended Complaint is also devoid of any allegations that any of these Defendants were in a position to impact the outcome of his affordable housing permit application, the only link to racial minorities pled by Mr. Stefanoni.  Thus, Mr. Stefanoni has failed to state a Section 1981 claim against Defendants Williams, Farren and Drake under this first legal theory.

The only named Defendant who Mr. Stefanoni directly alleges opposes the affordable housing developments is Mr. Boe.  *See* Second Am. Compl. ¶¶ 52-53, ECF No. 46.  Mr. Boe, however, is not alleged to have any link to the Darien Planning and Zoning Commission or authority to impact Mr. Stefanoni's affordable housing permit application.  Thus, Mr. Stefanoni has failed to plead an affirmative link between Mr. Boe's actions and the conduct that allegedly limited Mr. Stefanoni's ability to make and enforce contracts.

While Mr. Stefanoni does reference an e-mail by Mr. Boe, which in the context of the attempt to develop Hoyt Street, directs Mr. Stefanoni to "THINK ABOUT WHAT YOUR KIDS ARE ABOUT TO GO THROUGH," the comment refers to the "nice nest egg of home equity" and does not make any mention of the potential racial diversity of future affordable housing purchasers, as Mr. Stefanoni's own pleading makes clear. Second Am. Compl. ¶ 52, ECF No. 46.  In the absence of factual allegations linking Mr. Boe's opposition to affordable housing to an opposition to more African-American residents in Darien, Mr. Stefanoni has failed to state a Section 1981 claim against Mr. Boe.

Indeed, rather than base his alleged impairment of his affordable housing contract claim under Section 1981 on the actions of the Defendants he has sued, Mr. Stefanoni has chosen instead to plead facts he believes support a general connection between race and affordable housing.  However, he fails to make this connection plausible.

For example, Mr. Stefanoni claims that the Town of Darien has sought to keep housing costs "prohibitively high" to preclude African Americans from moving to the community.  Second Am. Compl. ¶¶ 16, 21, ECF No. 46.  But he fails in his Second Amended Complaint to link the cost of housing to an inability of racial minorities to live in the community.  He also makes general allegations that Darien has had a "long history of exclusive housing practices" and that "[p]ermitting affordable housing in Darien will lead to  an increase in the proportion of African Americans residing in the town" and that "[p]ublic officials… have followed a pattern of misconduct to exclude African Americans from the Town."  *Id.* ¶¶ 15-16, 21.  He claims that his family's efforts

to "construct affordable units in Darien are widely perceived in Darien as an attempt to open up housing opportunities [ ] to African Americans." *Id.* ¶ 21.  However, he does not allege any specific facts in support of these conclusory statements, much less connect them to the Defendants he has sued.  In any event, without more, these allegations are too speculative and do not plausibly state a relationship between race and affordable housing.  *Twombly*, 550 U.S. at 557.

Mr. Stefanoni also cites a decision recently made by this Court, *Hamer v. Darien Planning & Zoning Commission*, finding that plaintiffs in another unrelated case against the Darien Planning and Zoning Commission proved discriminatory animus motivated decisions to deny affordable housing permits.  No. 3:11-cv-1845 (WWE) (D. Conn. Sept. 30, 2014).  But Mr. Stefanoni has failed to show how these facts from a completely separate lawsuit relate to the particular affordable housing permit application described in the Second Amended Complaint or to the actions of the named Defendants.  The Court cannot take judicial notice of facts found in another case to cure defects in Mr. Stefanoni's Second Amended Complaint.  *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (citation omitted) (in considering a motion to dismiss, finding that a court may only take judicial notice of an opinion's existence, not of the facts found therein, and, therefore, declining to take judicial notice of facts set forth in a "final determination" issued by the Department of New York City); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (citation omitted) (noting that "courts routinely take judicial notice of documents filed in other courts, [ ] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation").

Significantly, the most specific fact Mr. Stefanoni alleges in support of the relationship between affordable housing and race is that the Connecticut statute under which affordable housing is built requires that the housing be "affirmatively marketed to minorities." *Id.* ¶ 16.[11]  However, even if true, affirmative marketing to minorities does not plausibly indicate that minorities would actually reside in the yet-to-be built affordable housing.  More importantly, this "specific fact" does not link any of the Defendants to discriminatory conduct.

Accordingly, for all of the Defendants, there is no viable claim under Section 1981 with respect to the impairment of Mr. Stefanoni's right to contract for affordable housing in the Town of Darien.

2.   **The Alleged Impairment of Mr. Stefanoni's Ability To Coach in the Darien Little League**

Alternatively, Mr. Stefanoni claims that the Defendants impaired his contractual ability to participate in the Darien Little League in violation of Section 1981.[12]  As noted

---

[11] The statute itself does not make any reference to minorities, but Mr. Stefanoni is presumably referring to Regulations of Connecticut State Agencies promulgated by the State of Connecticut's Commissioner of Economic and Community Development, which require that the marketing plan filed as part of an "affordable housing development application" provide "[a]nnouncements/advertisements… that will reach minority populations," marketing in areas "of high minority concentrations within the housing market area," and "[a]ssistance to minority applicants."  *See* Conn. Agencies Regs. §§ 8-30g-7(a)(3)(B), (D), (E); *see also Autum View, LLC v. East Haven Planning & Zoning Comm'n*, No. LNDCV136043869S, 2014 WL 7714346, at *9 & n.20 (Conn. Super. Ct. Dec. 23, 2014).  The regulation also promotes equal treatment for "racial and ethnic minorities identified as least likely to apply."  Conn. Agencies Regs. § 8-30g-7(a)(4).

[12] As mentioned above, since Mr. Stefanoni's son is not a Plaintiff in this law suit, the relationship between him and the Darien Little League (to the extent it can be considered a contractual) cannot be the contract with which Defendants are interfering under Section 1981.  The contract must be one under which, the Plaintiff himself has or would have had rights that were inferred with, not a third party.  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).  While the Court does not expressly address the issue of whether Section 1981 applies to Little League coaching, the Court assumes without deciding that participation in purely voluntary, non-profit activities is within the scope of this statute.  *See e.g., Walker v. Robbins Hose Co. No. 1, Inc.,* 465 F. Supp. 1023, 1025, 1048 (D. Del. 1979) (finding a Section 1981 violation based on claims that a volunteer firefighter organization discriminated in its practice to not recruit new members)*; but see Forrester v. Prince George's Cnty. Maryland*, Civ. A. No. HAR 88-844, 1989 WL 71774, at * 2 (D. Md. June 27, 1989) (noting that it is "unclear whether volunteers warrant the same protection as employees under Sec. 1981").

above, in order for this legal theory to be viable, Mr. Stefanoni must have pled that each of the Defendants acted with a discriminatory motive in denying him an opportunity to participate in Darien Little League activities.  Once again, he has failed to do so.

Under this theory, Mr. Stefanoni claims that Little League Baseball, Inc., the organization responsible for chartering Little League Baseball organizations globally, is a proper Defendant in the case because it was aware of the decisions made by the Darien Little League to "demote" Mr. Stefanoni's son and ban him as a coach and did nothing to correct these so-called misdeeds.  Mr. Stefanoni alleges that he informed Little League Baseball, Inc. of these events on two occasions.

First, he pleads that he appealed his son's team placement to Mr. Scott Miller, who at the time allegedly headed Connecticut's Little League District 1, which oversees the various Little League organizations of certain Connecticut towns including Darien. Second Am. Compl. ¶¶ 46-48, ECF No. 46.  He also claims that Mrs. Stefanoni forwarded documents to Little League Baseball, Inc. describing the actions taken against her husband and son as well as the family's "efforts to achieve integrated housing opportunities."  *Id.* ¶¶ 60-61.  Mr. Stefanoni alleges that by receiving this information and taking no action, Little League Baseball "endorsed" these "wrongful actions" and is legally responsible for them under Section 1981.  *Id.* ¶ 61.

These factual allegations, however, are either too conclusory or wholly insufficient to state a claim under Section 1981 relating to Mr. Stefanoni's participation in the Darien Little League.  *See Yusuf*, 35 F.3d at 713; *Albert*, 851 F.2d at 572-73.  As for any impairment in the relationship between Mr. Stefanoni and Darien Little League, the Second Amended Complaint fails to allege, much less explain, the relationship

between Little League Baseball, Inc. and Darien Little League.  The Court cannot infer

that Little League, Inc. had any ability to control or impact the hiring of coaches.

    While, at oral argument, Mrs. Stefanoni, the proposed intervenor, argued on Mr.

Stefanoni's behalf that he needed discovery to determine more precisely the link

between Little League Baseball, Inc. and the actions of the other Defendants, this

argument misapprehends Mr. Stefanoni's threshold obligation before filing this lawsuit.

He must have a good-faith basis for alleging that intentional racial discrimination by

Little League Baseball, Inc. occurred prior to bringing the lawsuit and be in a position to

allege facts sufficient to withstand legal scrutiny under the Federal Rules of Civil

Procedure.  *See Vent v. Mars Snackfood US, LLC*, 611 F.Supp.2d 333, 340-41

(S.D.N.Y. 2009) (rejecting plaintiff's argument on a motion to dismiss that she needed

more discovery to flesh out her claim and noting that under *Twombly*, "a plaintiff must

include sufficient factual allegations to raise a right to relief above the speculative

level.").  Otherwise, the claims are subject to dismissal under the pleading standards set

forth by the Supreme Court in *Twombly* and *Iqbal*.

    With respect to the Darien Little League, the Second Amended Complaint

focuses on the actions of First Selectman Campbell and Mark Gregory, neither of whom

are Defendants in this lawsuit.  Mr. Gregory, whose home was next to the Hoyt Street

property, was a member of the Darien Little League Board, but that relationship ended

in 2009 and, therefore, did not exist when Plaintiff alleges that Darien Little League

acted against him in 2011.[13]  Second Am. Compl.¶¶ 24-26, ECF No. 46.  Plaintiff also

---

[13] Mr. Stefanoni alleges that Mr. Gregory became a member of the Darien Babe Ruth League Board of Directors in 2009, when his son began playing baseball in that organization.  Second. Am. Compl. ¶ 26, ECF No. 46.  However, he does not explain what relationship, if any, the Darien Babe Ruth League has to Darien Little League.

alleges that First Selectman Campbell had a financial relationship with the Darien Little League through a company he owned which financially assisted them with a construction project and was a "long-time" supporter of the organization.  *Id.* ¶ 19. However, in making these allegations, Mr. Stefanoni does not claim that First Selectman Campbell or Mr. Gregory had an impact on the Darien Little League's decision to ban Mr. Stefanoni from coaching.

At most, Mr. Stefanoni has alleged that the Darien Little League interfered with his ability to coach.  Even if such a relationship can be considered contractual, he fails to allege that these actions were motivated by intentional racial discrimination.  *See Brown*, 221 F.3d at 338-39.  There is not a single factual allegation to support the notion that the Darien Little League, as an organization, took any position on affordable housing in Darien or exhibited any racial bias in the hiring of its coaching staff.

Mr. Stefanoni refers to Darien Little League's "history of turning a blind eye to racist comments" and to "racist and bigoted" comments made by members of the Little League Board on social media.  Second Am. Compl. ¶ 66, ECF No. 46.  However, these claims are "simple conclusory allegations" that do not give rise to a plausible inference of racially discriminatory intent, much less an inference that such intent impacted Defendants' actions against Mr. Stefanoni and his son.  *See Albert*, 851 F.2d at 572 (finding that an allegation that defendant selectively enforced its rules against plaintiffs "because they are black [or] Latin and supportive of the rights of blacks [or] Latins" or because they are "supportive of the rights of blacks [and] Latins" was too conclusory to satisfy Section 1981's requirement of intentional racial discrimination). Mr. Stefanoni's allegation that his son was treated in an unprecedented manner is also

insufficient, without specific factual allegations linking the treatment of his son to the issue of race specifically.

Mr. Stefanoni's allegations about the timing of the filing of his affordable housing application and the actions of the Darien Little League also fall short of pleading a viable Section 1981 claim. He pleads that he filed the application for an affordable housing permit on August 20 and that his son initially started in the Minors, the allegedly proper team, on August 26, Second Am. Compl. ¶¶ 41-42, ECF No. 46, but then a day later was "demoted" to a lesser team. He also alleges that his ban from coaching occurred "a few days prior to the official release of the already public decision" approving his affordable housing application. *Id.* ¶ 57. Even if these allegations support a connection between the Darien Little League's actions against Mr. Stefanoni and his son and Mr. Stefanoni's advocacy for affordable housing, these allegations fail to claim that the Darien Little League as an institution was motivated by race in doing so. Without more, Mr. Stefanoni has failed to raise a plausible inference of intentional racial discrimination, and a Section 1981 claim against the Darien Little League cannot be sustained.

The only allegation made against David Williams is that he communicated the decision of the Darien Little League to place Mr. Stefanoni's son on a team with AA and AAA level players. *Id.* ¶¶ 41-42. Mr. Williams was a member of the Darien Little League Board of Directors and the Commissioner of Fall Baseball at the time the decision was made; he was also a member of the Board when Mr. Stefanoni was "banned" as a coach. *Id.* ¶¶ 9, 41-42. Mr. Stefanoni does not allege any facts supporting an inference that in communicating the news of the "demotion," Mr. Williams was acting with racial bias or with the goal of deterring Mr. Stefanoni from building

affordable housing in Darien.  Thus, Mr. Stefanoni has failed to state a Section 1981 claim against Mr. Williams.

Likewise, the allegations against Mr. Farren amount to the following: that he was told of the decision to place Mr. Stefanoni's son on a lower level team and did nothing to move him to a higher level team, thereby "endors[ing] and defend[ing]" the action taken by the Darien Little League.  *Id.* ¶ 46.  Mr. Stefanoni alleges that Mr. Farren was the President of the Darien Little League Board at the time the decision regarding his son was made and was a Board member at the time he was "banned" as a coach.  *Id.* ¶ 8.[14] These allegations do not indicate that Mr. Farren actions were motivated by intentional racial discrimination or that he had the desire to influence the outcome of Mr. Stefanoni's affordable housing permit application.  As a result, the Section 1981 claim against Mr. Farren must be dismissed.

Mr. Drake, another Defendant, is alleged to have informed Mr. Stefanoni that he was "banned" from coaching Darien Little League in March 2011.  Second Am. Compl. ¶ 57, ECF No. 46.  Mr. Drake was a Board member at the time the decisions were made regarding Mr. Stefanoni and his son.  *Id.* ¶ 10.  There is no allegation in the Complaint that Mr. Drake opposed having more African-American residents in the Town of Darien or that informing Mr. Stefanoni of the "ban" on him coaching was motivated in any way by intentional racial discrimination or a desire to stop affordable housing in Darien.  The Section 1981 claim against Mr. Drake, therefore, must be dismissed.

The only allegations made against Todd Boe are that he sent e-mails on September 14 and 15, 2010 expressing his disapproval of Mr. Stefanoni's decision to try

---

[14] The allegation reads that he held his position as President of the Board "until 2011."  Thus, the Court cannot ascertain with certainty from the face of the Complaint whether he was in that position when Mr. Stefanoni was "banned" from coaching.

to develop the Hoyt Street property into affordable housing and that he had "previously publicly opposed" the development of affordable housing on a different property Mr. Stefanoni owned on Nearwater Lane.  *Id.* ¶¶ 52-53.  Mr. Boe was not on the Darien Little League Board when Mr. Stefanoni was "banned" from coaching and his son was "demoted."  *Id.* ¶ 11.[15]   Thus, Mr. Stefanoni has not pled an affirmative link between Mr. Boe's actions and the conduct that allegedly limited Mr. Stefanoni's ability to make and enforce contracts.  *See Albert*, 851 F.2d at 572-73; *Ginx*, 720 F.Supp.2d at 347, 357-58, He also fails to allege that Mr. Boe was motivated in any sense by intentional racial discrimination.

As a result, the Section 1981 claim must be dismissed as to all of the Defendants.

## VI.      CONCLUSION

In sum, Mr. Stefanoni has failed to state a claim under Sections 1981, 1983 and 1985(3) upon which relief can be granted against any of the Defendants.  Fed. R. Civ. P. 12(b)(6).

The Court dismisses the case with prejudice because Mr. Stefanoni has already twice amended his complaint and a liberal review of the allegations in the Second Amended Complaint gives no indication that a valid claim could ever be stated.  ECF Nos. 16, 46; *see Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile.");  *Cuoco v. Mortisugu*, 222 F.3d 99, 112 (2d Cir. 2000) (upholding a district court's

---

[15] Mr. Stefanoni alleges that like Mr. Gregory, Mr. Boe became a member of the Darien Babe Ruth League Board of Directors in 2009, but as described in footnote 13, fails to explain what relationship if any this organization or its Board has to the Darien Little League.  Second. Am. Compl. ¶ 27, ECF No. 46.

dismissal of a complaint with prejudice because "[t]he problem with [plaintiff's] cause of action is substantive" and "better pleading will not cure it").

In addition to having received three versions of this lawsuit, the Complaint, the First Amended Complaint and the Second Amended Complaint, the Court provided considerable latitude by allowing the proposed intervenor, Mrs. Stefanoni, Plaintiff's wife, to submit additional argument regarding Defendants' Motion to Dismiss in both written and oral form.  All of these submissions reveal that the fundamental issue is not that Mr. Stefanoni has pleaded his claim improperly in a way that he can fix by amending, but that there is a substantive and unbridgeable gulf between the legal claims that Mr. Stefanoni wishes to pursue and the applicable law.

At oral argument, Mrs. Stefanoni, who was permitted to argue on Mr. Stefanoni's behalf, suggested that in today's environment of political correctness, it is difficult to find direct evidence of discriminatory intent at the pleading stage.  She implied, if not outright stated, that discovery was needed to flesh out the Second Amended Complaint's sparse factual allegations on discriminatory intent.  As noted above, this argument misses the point.  *See Vent*, 611 F.Supp.2d at 340-41.  It also makes clear that Mr. Stefanoni can only plead what the applicable law considers to be "conclusory statements" in support of his claims of intentional racial discrimination at this stage.

Given the U.S. Supreme Court's clear guidance on the threshold test applied to federal court pleadings, this Court cannot rely on Plaintiff's supposition that there is a factual basis for saying that Defendants intentionally discriminated against him, but he just does not know that basis yet.  Under the Supreme Court's decisions in *Twombly* and *Iqbal*, Mr. Stefanoni had to plead in his Complaint the specific facts that make an

inference of intentional racial discrimination plausible, not identify these facts at some other point in the litigation.  *Twombly*, 550 U.S. at 557.  Having provided multiple opportunities to plead such facts, the Court finds no basis for permitting Mr. Stefanoni another opportunity to do so.  *See Grimes v. Fremont General Corp.*, 933 F.Supp.2d 584, 596-97 (S.D.N.Y. 2013) (dismissing a *pro se* complaint with prejudice because amendment would have been futile and plaintiff had already been given two opportunities to amend).

For all of the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 50, is **GRANTED** on all counts with prejudice.  The Clerk is directed to enter judgment in favor of Defendants and close this case.

SO ORDERED at Bridgeport, Connecticut this 27th day of April, 2015.

 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE